## WILLIAM USHAW v. CHARLES E. MALLETT.

*Equity—Relief against conveyance procured by fraud—Credibility of testimony—Review in Supreme Court.*

1. Where it appeared that a complainant was unaccustomed to the transaction of business requiring the execution of legal instruments and conveyances, and that, in the transactions had with the defendant in regard to the land in controversy, complainant relied almost entirely upon and confided in others, and that whatever instruments were executed by him and his wife, who could neither read nor write, were not read to them by the attorney of the other contracting party, equity will, upon a proper disclosure of the facts, furnish the proper relief.

2. Where in such a case the evidence was mostly given by the parties and the attorney for the defendant, and was conflicting, and was all carefully examined by the judge who made the decree appealed from, who, from his acquaintance with the witnesses, had superior advantages for judging of their credibility,— *Held*, that the appellate court will not often feel warranted in disturbing the decree.

Appeal from Berrien. (Smith, J.) Argued October 21, 1886. Decided January 6, 1887.

Bill to compel conveyance of land. Defendant appeals. Decree affirmed, with slight modification. The facts are stated in the opinion.

*E. M. Plimpton* (*Clapp & Bridgman,* of counsel), for
complainant.

*D. Bacon* (*J. A. Kellogg,* of counsel), for defendant.

SHERWOOD, J.   The bill in this case is filed to compel the
defendant to convey to complainant, by a good and sufficient
deed, 50 acres of land off the north end of the east half of
the north-west quarter of section 20, township 6 south, of
range 19 west, lying in the county of Berrien, excepting five
acres off the north end thereof, or that, instead thereof, if,
upon an examination of the case as presented on the plead-
ings and proofs, the court should be of opinion that the
complainant's equitable rights in the premises would be bet-
ter protected and enforced by securing to him the payment
of the money he has advanced upon his contract with defend-
ant for the purchase of said land, together with the value
of the improvements he has made thereon, decree may be
made accordingly; and that the defendant may be restrained
by injunction from making sale of the property until final
decree is made in the premises, and depriving complainant
of his possession.

The case made by the bill is substantially as follows:

In 1865 the complainant lived in Huron county, Ohio, and
the defendant was a resident of the same county, and owned
the land in question, with other parcels lying in Berrien
county.   The complainant also owned 40 acres of unimproved
land lying on section 21, in the town of Lake, Berrien county.
In the same year the complainant removed to Michigan, near
the land of defendant in question.   This land had a small
house and barn upon it, but was otherwise unimproved.   Soon
after the complainant with his family arrived, at the request
of the defendant the complainant removed with his family
into the house on defendant's lot, where he has ever since
remained.

The bill further avers that he had been upon the land but a short time when defendant proposed to sell the same to him for $1,000; that not long after this the complainant sold his 40 acres, and took $500 of the purchase money in notes, and thereupon, in the spring of 1867, wrote to the defendant he would treat with him for the purchase of his 45 acres if defendant would take complainant's said notes towards payment; that on the first of November thereafter, Mallett came to Michigan, and saw complainant, and four days later agreed with complainant to sell to him the land for $1,000, and take the aforesaid notes as part payment, and for payment of the remaining sum agreed to take notes made by complainant, secured by mortgage upon the property; that the complainant made the notes and mortgage, and delivered the same to the defendant, as promised, and the defendant executed and delivered to the complainant a deed of the land not signed by his wife; that neither said deed nor mortgage has ever been recorded, nor has said mortgage ever been paid; that the complainant is an illiterate, uneducated man, scarcely able to read or write his name, and unacquainted with business; that he was soon informed that the defendant's deed, unsigned by his wife, did not give him a good title, and thereupon sent the deed to defendant in Ohio to obtain the wife's signature; that Mallett received the deed, and repeatedly promised complainant that he would have his wife sign it, and return it to complainant, which defendant never did; that complainant made many unsuccessful efforts to secure a return of said deed, and for the want thereof he underwent great anxiety and embarrassment, and was entirely unable to raise money upon the property to relieve him from his pecuniary engagements, and suffered much damage thereby; that he has never, after repeated importunities, been able to obtain from defendant any other deed for his property; that in the meantime he has cleared up the land, built a new house thereon, fenced the land, grown a valuable

orchard, and made the little farm a desirable homestead, and increased its value to $2,500; that he is now 65 years old, and has no other property, and is nearly worn out by hard labor; that defendant now seeks to deprive him of his property, absorb the proceeds of his many years of toil, and drive him from his home without any compensation whatever; that, about six years since, the defendant came to the house of complainant on his farm, and, after making known his business, handed to the wife of complainant the five notes and mortgage which he had given to defendant when he purchased the property, and said to her, "I make you a present of these;" and when, shortly after, he was seen by complainant, and asked what he meant by so doing, defendant replied, "You have lost your land." Complainant then demanded a deed of the land, and told defendant, "when that was done, he was ready to pay him all he owed him," and would have paid him long before had not defendant withheld the deed from him.

The bill further avers that defendant never asked complainant to pay him anything after the mortgage was made, but has written to complainant several times, when requested to return the deed with his wife's signature, that he would do it, and it should be all right, and that he was not anxious for his pay; that complainant had always paid the taxes upon the property, which has been regularly assessed to him; that the property is all the home he has for himself and wife in their feebleness and old age, and, until defendant got ready to deprive him of it, he always said to complainant and his wife it was for that purpose he desired them to have it, and he should never make them any trouble; that a few years since a lawyer from Niles called at the house of complainant, when he and his wife were alone, no one else being present, and stated he had a paper he wished them to sign, so they could get a deed of their land, and that if they signed it they would surely get their deed, but, if complainant and

his wife did not sign it, they could not get a deed of their home; that, the lawyer being David Bacon, a gentleman with whom the parties had been acquainted for some years, and believing what he told them was true, complainant and his wife signed the paper, without hearing it read, and never have known what its purport was, but are informed it was a quitclaim deed of their farm running to said defendant; that from that time complainant has remained in possession of his homestead, expecting his deed from Mallett and wife therefor, until in January, 1881, when he received a letter from said Mallett that he had sold complainant's farm to a Mr. Millar, and requesting complainant to give said Millar possession when he called for it, and that this was the first intimation he ever received from Mallett that he did not intend to give your orator a deed of his homestead; that said Mallett, by his said attorney, David Bacon, commenced proceedings before a circuit court commissioner to eject complainant from his home; and that complainant verily believes that Mallett, by the means taken and herein stated, intends to deprive complainant of his property.

The bill was filed on the nineteenth day of March, 1881. An order for the defendant's appearance was published, he being a non-resident of the State. He failed to appear, and the bill was taken as confessed against him on the twenty-seventh day of May following.

On the twentieth day of June, 1881, an order was made vacating the order *pro confesso*. The answer of defendant was filed on the sixth of June. The proofs were taken previous to the twentieth day of September, 1882, and on that day were reported to the court by the circuit court commissioner. On the nineteenth day of November, 1883, it was stipulated by the solicitors of the parties that the cause might be heard on the pleadings and proofs.

The cause was brought to a hearing on the eighteenth day of April, 1881, at which time the defendant was allowed

64 MICH.—3.

to amend his answer, and the hearing was continued. The amended answer, signed but not sworn to by defendant, was filed on the twenty-fifth day of August following.

The original answer does not appear in the record.

The amended answer admits the complainant's entry upon the land in dispute under the circumstances stated in the bill, and the agreement for the purchase thereof, the making of the deed by defendant, the mode and manner of payment, the retention of said deed by defendant after the same was sent to him for his wife's signature, and the condition of and improvements upon the land as charged by complainant's bill. The other material facts charged are denied, and the answer then avers that, at the time Mr. Bacon obtained the deed from complainant and his wife, the complainant executed a contract, which had previously been signed by the defendant, whereby the latter sold and agreed to convey the land in question to the complainant, and that the complainant agreed to pay therefor $800, with interest at 10 per cent. ; said sum to be paid in two equal annual payments from the date of the contract, at which time a deed was to be given. Time was to be taken as of the essence of the contract; and in case of non-payment of said sum, or any part thereof, the land was to become forfeited to the defendant, together with all improvements made thereon, and payments before then made upon the contract, and the complainant was to be debarred of all rights or remedies thereunder, either at law or in equity.

Among the witnesses whose testimony was taken were the complainant and his wife, and the defendant and Mr. Bacon. A reference was ordered by the court, after the amended answer was filed, to take proofs of the value of the improvements, and of the use of the land at the date of the deed given by defendant, and the interest on the money paid to defendant. On the coming in of the report on the reference, the hearing of the cause was resumed before Judge Smith,

who, after giving due consideration to the case, on the twelfth day of April, 1886, made a decree requiring the defendant to pay to the complainant, or to his solicitors, within 90 days from the date of the decree, the sum of $1,931.36, and the costs of the suit to be taxed, and, upon such payment being made, that the complainant yield and deliver up the possession of the land in question to the defendant, and, in case defendant neglects or refuses to make such payment, that the said complainant shall have said lands in fee, and be vested with the title thereof under the decree, a certified copy of which may be recorded by complainant in the office of the register of deeds of Berrien county, and shall have the same force and effect as a deed of conveyance of said lands from the defendant.

The circuit judge also finds in the decree that the material allegations in the bill of complaint have been sufficiently and satisfactorily proven, and that defendant has failed to comply with his agreement with the complainant, and give him a good and sufficient deed of said land, and has refused so to do.

The defendant asks a review of the case in this Court on appeal.

It appears beyond question that the complainant is unaccustomed to the transaction of business requiring the execution of legal instruments and conveyances, and has but little education, and that his wife can neither read nor write; that, in all such kinds of business as was had between these parties in relation to the property in question, the complainant must almost entirely rely upon and confide in others. It is also quite certain that whatever instruments were executed by him or his wife in the presence of Mr. Bacon were not read by either of them, or by Mr. Bacon to them. These facts are not controverted by the answer or in the proofs.

That the complainant is a man of a very confiding nature, and to the extent of being easily overreached in business

transactions of the kind in question, is clearly manifest in this case. Justice will not allow any such advantage to be taken with impunity; and when it occurs equity will, upon a proper disclosure of the facts, always furnish the proper redress. It would be a poor administration of the law, indeed, which did not protect the weak against the avarice of the strong in the most important affairs of life.

The evidence in the case on the main issues is mostly by the parties and by one of the attorneys for the defendant, and is very conflicting. I shall not attempt a synopsis of it here, as it could serve no useful purpose. The record shows it was all carefully examined by the learned circuit judge who decided the case and made the decree below, and his acquaintance with the witnesses in whose testimony the conflict appears afforded him superior advantages for judging of the credibility of the testimony; and, when such is the case, it is not often we feel warranted in disturbing the decree made at the circuit, and, with a slight modification, I think the decree made by Judge Smith should be affirmed.

I do not think the defendant should be allowed to recover the interest on his mortgage; but, if he makes the complainant a deed of the property, he should be permitted to have of the complainant, upon the purchase money, the sum of $200, which should be a first lien on the property, with interest from the date of the decree below.

The complainant has had all of his property tied up in this land by the action of the defendant, with no certainty that he would ever receive anything from it, during the past 19 years. He has not only been harassed with an unnecessary ejectment proceeding, but has been obliged to prosecute this suit through both courts, with all of its attendant expenses, and I think the $300 remaining of the purchase money, and which was secured by the mortgage, no more than sufficient to compensate the complainant for the injury he has sustained, and the money he has paid, and will be obliged to pay, over and above the costs he will receive.

And if defendant shall elect to keep the land, and refuse to make to complainant a good and sufficient deed thereof, then, and in such case, he must pay to complainant the sum of $1,731.36, with interest thereon from the date of the decree at the circuit, within 90 days from the date of the decree in this Court, which I think should be entered in accordance with this opinion. In the view I take of this record, no other decree will do justice between these parties. I have no question as to our jurisdiction in the premises, and as little as to our duty in the case.

The decree below, as modified in accordance with the suggestions herein contained, should be affirmed, with costs of both courts.

CAMPBELL, C. J., and MORSE, J., concurred. CHAMPLIN, J., did not sit.